UNITED STATES, Appellant

v

RUFUS LEWIS, JR., Sergeant,
U. S. Air Force, Appellee

18 USCMA 287, 39 CMR 287

No. 21,649

April 25, 1969

*Major Donald B. Strickland* argued the cause for Appellant, United States. With him on the brief was *Colonel James R. Thorn*.

*Lieutenant Colonel Bertram Jacobson* argued the cause for Appellee, Accused. With him on the brief was *Colonel Joseph E. Krysakowski*.

### Opinion of the Court

DARDEN, Judge:

Following his plea of guilty, accused was convicted by a special court-martial of absence without leave and missing movement—violations of Articles 86 and 87, Uniform Code of Military Justice, 10 USC §§ 886 and 887, respectively. His sentence of bad-conduct discharge, confinement at hard labor for three months, forfeiture of $70.00 per month for the same period, and reduction to Airman Basic was approved by both the convening and supervisory authorities. A board of review, however, set aside the findings and ordered a rehearing. The Judge Advocate General of the Air Force has forwarded the record of trial and the decision of the board of review to this Court, certifying[1] the two following issues:

[1] Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867.

"WAS THE BOARD OF REVIEW CORRECT IN HOLDING THAT THE REMARKS MADE AT TRIAL BY THE INDIVIDUAL DEFENSE COUNSEL MADE THE GUILTY PLEA IMPROVIDENT, REQUIRING REVERSAL OF THE CONVICTION?

"WAS THE BOARD OF REVIEW CORRECT IN CONCLUDING THAT EVEN IN THE ABSENCE OF THE REMARKS MADE AT TRIAL BY THE INDIVIDUAL DEFENSE COUNSEL THE GUILTY PLEA WAS IMPROVIDENT AND REQUIRES REVERSAL OF THE CONVICTION?"

Aware of the accused's intent to plead guilty, the president of this special court-martial inquired into the providence of the plea. His advice to Lewis covered a discussion of the elements of the offenses charged, the meaning and effect of such a plea, voluntariness, and the maximum imposable sentence resulting. After

**287**

an acknowledgment from the accused that he was pleading guilty because he was, in fact, guilty, the plea was accepted. Prosecution evidence, including stipulations of fact that independently support the findings, was then introduced.

In mitigation, after findings, individual defense counsel included the following remark in an unsworn statement given in behalf of his client:

"You, of course, noted that we did not present a defense. In every court-martial or AWOL there is a reason and this might very well be a defense, but we as attorneys like the learned prosecutor, must present evidence, witnesses, a complete package for your consideration in arriving at your verdict. After very thorough investigation first by Captain Smith and then by myself, and then with Captain Smith and myself going over the evidence that we presented to the court, we did not feel that we could do justice to our client by presenting the reason and the factors behind this offense. A plea of guilty in and of itself is mitigation, and we feel given the particular factors in the overall picture of this case that we could better serve the individual, which is our duty, by pointing out to the court these particular factors which we did ask that you take into consideration in arriving at your sentence.

•   •   •   •   •

". . . I would also like to reiterate the factor that though we do not present a defense, this does not mean there was not a defense. It simply is a question of proof, gentlemen. As the prosecutor must prove him guilty beyond reasonable doubt, we also must present you with evidence and witnesses, present an entire case to you, and in many circumstances this is impossible, and unfortunately this is one of them."

The accused, during a post-trial interview, then spotlighted counsel's remarks by denying guilt. Lewis's disavowal is contained in the clemency

**288**

portion of the staff judge advocate review. It reads:

"8. When asked to explain the circumstances surrounding his AWOL, the accused stated that the weekend before he was scheduled to leave he was accosted by some black militants at a San Antonio bar. He states that he was taken at gun point and held against his will for the entire duration of his AWOL at a house on the outskirts of San Antonio. When asked why he did not plead this matter at trial, he stated that his appointed defense counsel and his individual defense counsel explained to him that, although his story of kidnapping was a defense, it would be impossible for him to prove it. Since the court might think him a liar and reflect this opinion in the sentence, the accused states that he was advised to consider a guilty plea. A guilty plea, the accused states, would allow the accused to rely on his lengthy service and rank. The decision whether to plead guilty or not was, after it was explained to him, left completely up to him. He decided that his chances were better to plead guilty.

•   •   •   •   •

"10. When asked, the accused stated he was satisfied that his lawyers had done a good job and that his case was just one of those that could not be adequately proven to defeat the charges placed against him. However, he nevertheless maintains that if he could find the people who detained him he could prove his innocence."

After considering counsel's remarks and accused's protestations of innocence, the board of review reversed the accused's conviction with these words:

"In our view, the closely analogous situation in United States v Vance, 17 USCMA 444, 38 CMR 242, and the results reached therein by a unanimous Court are controlling. Reversible error resulted there when the law officer did not make a subsequent inquiry into the providence

of the plea (although, as in the case at bar, a full and proper interrogation had been conducted following arraignment). Inconsistent matters had been raised in that case by defense counsel's remarks during an out-of-court hearing. Significant too, is the fact that Vance, who also remained silent at trial, was faced with a dilemma akin to that of Lewis in his apparent pretrial inability to obtain independent evidence of his alleged discharge, which would have constituted a complete defense.

"It was incumbent upon the president of the court to make further inquiry into the providence of appellant's plea (U. S. v Vance, *supra*; U. S. v Thomas, 14 USCMA 223, 34 CMR 3, where the inconsistency was raised by presentencing evidence and ACM S–21503, Stinson, 35 CMR 711 at 714, pet. den. 35 CMR 478; U. S. v Brown, *supra*, p. 25). He should have conducted a meaningful inquiry as to the basis for these remarks, and thereupon should either have required in-court disavowal of these defense assertions or, in the absence thereof, he should have set aside the guilty plea.

"Even in the absence of the remarks made at trial, we conclude that the issue of improvidence was clearly raised and on the facts of this case would require reversal. Under proper circumstances, including those of the instant case, post-trial averments of innocence may be used to raise the issue or to enlarge thereon (U. S. v Richardson, *supra*, citing in turn, U. S. v Henn, U. S. v Lemieux, and others, all *supra*)."

According to appellate defense counsel, United States v Vance, 17 USCMA 444, 38 CMR 242, is dispositive of the first issue.

Improvidence, once raised, made it "incumbent upon the president of the special court-martial to make further inquiry, and his failure to do so constituted reversable [sic] error." United States v Thomas, 14 USCMA 223, 34 CMR 3.

Appellate Government counsel view the president's initial inquiry as a meaningful compliance with the procedures recommended in United States v Chancelor, 16 USCMA 297, 36 CMR 453. They see nothing in defense counsel's statement inconsistent with Lewis's guilty plea. *Vance* is considered by appellate Government counsel as not " 'closely analogous,' " for, in that case, unlike the one at hand, a defense was asserted from the very inception of trial. We disagree.

Improvidence of a plea may arise during post-finding proceedings. To this extent, therefore, *Vance*, as the board of review asserted, is a "closely analogous" case. United States v Fernengel, 11 USCMA 535, 29 CMR 351; United States v Thomas, supra.

That the president in this case made a thorough initial inquiry as to accused's plea of guilty stands unquestioned. In this instance, the deficiency lies elsewhere.

The import of counsel's statement is that a defense existed, although it was not invoked. For the accused, the value of this assertion as a "mitigating" circumstance rests solely in this interpretation. Any lesser treatment would diminish its significance, reducing the statement to a mere exercise of rhetoric. Counsel must have intended an impact beneficial to the accused.

This Court's earlier decisions make the rule plain; counsel and the accused may not introduce information inconsistent with a guilty plea and then leave the information in suspension after concluding it is unlikely to result in a finding of not guilty. Unless they disavow such inconsistent matter, the guilty plea must fall as improvident. This is the holding of both *Chancelor* and *Vance*. United States v Watkins, 11 USCMA 611, 29 CMR 427, and United States v Hinton, 8 USCMA 39, 23 CMR 263, cases supporting the view that an accused and counsel may weigh and then abandon evidence of a defense in favor of possible advantages derived from a guilty plea, espouse a rationale re-

jected by both *Chancelor* and *Vance*—in the latter, unanimously.

I am in accord with the viewpoint expressed in these later cases, for Article 45(a) of the Uniform Code of Military Justice, 10 USC § 845, permits no digression. This provision, in pertinent part, specifically requires that if, after a plea of guilty, accused "sets up" inconsistent matter, "a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." Cf. Manual for Courts-Martial, United States, 1951, paragraph 70*b*.

The Court, in *Vance*, set forth the procedure thusly:

"In the case at bar, a most thorough inquiry was made by the law officer and he is to be commended for his acute attentiveness to the procedural requirements discussed in *Chancelor*. The fact remains, however, that the continued assertion by the appellant, as related to the law officer by defense counsel, that he had been discharged was entirely inconsistent with his plea of guilty to a charge of desertion. Upon receipt of such information, the law officer should have received from the appellant a disavowal of such claim or refused to accept the plea. He did not do so. Cf. United States v Cleveland, 15 USCMA 121, 35 CMR 93; United States v Thomas, 14 USCMA 223, 34 CMR 3; United States v Gossett, 14 USCMA 305, 34 CMR 85; United States v Harrell, 14 USCMA 517, 34 CMR 297; United States v Caid, 13 USCMA 348, 32 CMR 348; United States v Schneiderman, 12 USCMA 494, 31 CMR 80; United States v Fernengel, 11 USCMA 535, 29 CMR 351." [17 USCMA, at page 446.]

When, under circumstances present here, the procedure is not followed, reversal is the necessary consequence. United States v Thomas and United States v Vance, both supra.

Our disposition of the first certified issue makes it unnecessary to consider the remaining question.

We hold the board of review was correct in concluding that the remarks made at trial by individual defense counsel raised the possibility of improvidence, thereby requiring the president of the court to make further inquiry into the matter.

The decision of the board of review is affirmed.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

I would answer the certified questions in the negative and reverse the decision of the board of review. United States v Hinton, 8 USCMA 39, 23 CMR 263; see also my dissent in United States v Chancelor, 16 USCMA 297, 36 CMR 453.