UNITED STATES

v.

Airman First Class Robert E. SCHOCKEN, FR 308–64–1192 438th Transportation Squadron Twenty-First Air Force (MAC).

ACM S24197.

U. S. Air Force Court of Military Review.

8 Aug. 1975.

Appellate counsel for the Accused: Colonel William E. Cordingly and Colonel Jerry E. Conner.

Appellate counsel for the United States: Colonel C. F. Bennett.

## DECISION

HERMAN, Judge:

A special court-martial consisting of a military judge sitting alone convicted this accused of two offenses of possession of marihuana as well as the larceny of a typewriter in violation of Articles 134 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 921, in consonance with his pleas of guilty to all offenses. The approved sentence is a bad conduct discharge, confinement at hard labor for four months and reduction to airman basic.

Appellate defense counsel contend that the accused's guilty plea to the offense of larceny was improvidently made. We disagree.

The accused removed an IBM Selectric II typewriter from the Central Base Personnel Office and transported it to his place of duty in the Transportation Squadron at McGuire Air Force Base, New Jersey. At trial, part of the inquiry of the military judge conducted under the mandate of *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), elicited the following responses from the accused:

MJ: At the time you took the typewriter, what was your intention? What were you going to do with the typewriter?

ACC: For my personal use and I used it in the office of the Transportation Orderly Room and just for my use and the Government's use over in the Orderly Room.

MJ: Now, you say for your use and the Government's use?

ACC: Yes, sir.

MJ: Were other people using the typewriter in the Orderly Room besides yourself? Is that what you mean?

ACC: Yes, sir.

MJ: Did anyone say anything to you about the typewriter when it appeared in the Orderly Room?

ACC: Yes, sir. They asked me where I got it and I just told them that I bought it and they dropped it at that.

MJ: In other words, you led them to believe it was your own personal property?

ACC: Yes, sir, I did.

MJ: By "the Government's use", you were referring to letting other people, other individuals, use the machine with your permission as though it were your own. Is that correct?

ACC: Yes, sir.

■ Article 45(a), Uniform Code of Military Justice, requires that a plea of not guilty be entered for an accused who, after a plea of guilty, sets up matter inconsistent with his plea. Appellate defense counsel assert that because the accused placed the typewriter at his place of duty and used it partly for Government work, there is a patent inconsistency with an intent perma-nently to deprive the Government of the property. The Court of Military Appeals, in *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973), clearly established that, for an improvident plea to be found, there must be more than a *possibility* of conflict between the guilty plea and the accused's statements. The test for applying Article 45(a) is to be met ". . . by requiring some substantial indication of direct conflict between the accused's plea and his following statements." 47 C.M.R. at 3; *United States v. Hebert* (No. 29,766), 23 U.S.C.M.A. 499, 50 C.M.R. 579, 1 M.J. 84, decided 25 July 1975.

■ The responses of the accused in this case are not at all inconsistent with his guilty plea. It is undisputed that he removed the typewriter from the Central Base Personnel Office without permission, placed it in the trunk of his car, and took it to his squadron orderly room, which was also his duty section. When asked about its origin, his response was that he had bought it, the ordinary meaning of which is that he owned it. Although others in the orderly room used the typewriter, this was done with the accused's permission, given as if the typewriter was his personal property; this is a clear exercise of dominion and control over what he had declared was his own. The fact that some of the work done with this machine may have been for governmental purposes does not constitute a "substantial indication of direct conflict" with his plea. Compare the post-trial statement of the accused in *United States v. Gill*, 50 C.M.R. 206 (A.F.C.M.R. 1975).

The military judge advised the accused of the elements of the offense of larceny, specifically mentioning the intent permanently to deprive another of the use of, or permanently to appropriate to his own use, the typewriter in question. The accused agreed that he understood the elements and that they accurately described what he had done. *United States v. Wimberly*, 20 U.S.C.M.A. 50, 42 C.M.R. 242 (1970); *United States v. Long*, 47 C.M.R. 926 (A.F.C.M.R. 1973). He indicated that he had discussed the plea

with his counsel and that he was satisfied that the plea of guilty was in his best interests. There is nothing in the record indicating the accused changed his mind, to the present time. We must assume that the accused and his counsel weighed the evidence and decided that they could not successfully interpose a defense to larceny. *United States v. Hinton*, 8 U.S.C.M.A. 39, 23 C.M.R. 263 (1957). We will not substitute our judgment for that of competent counsel and the accused, where the evidence shows a possibility that the accused entertained something less than the specific intent required by the offense of larceny.

 Appellate defense counsel contend that the crime of larceny, or for that matter, wrongful appropriation, may not be committed by the unauthorized transfer of Government property from one Government office to another. *United States v. Satey*, 16 U.S.C.M.A. 100, 36 C.M.R. 256 (1966). In *Satey*, the military judge erred when he instructed that an intent permanently to deprive a Government imprest cash fund of the use and benefit of its monies constituted larceny, even though the funds were used for the sole benefit of the Government. This is a far cry from the circumstances of the instant case, wherein the primary intent of the accused was his personal benefit. Further, this was not what has been described elsewhere as "normal scrounging" or "cumshaw," the import of which is the *voluntary* transfer or trade of surplus supplies by military or naval units. In such activities, the items are intended for continued Government use and benefit. See *United States v. Miles*, 11 U.S.C.M.A. 622, 29 C.M.R. 438 (1960); *United States v. Pitts*, 12 U.S.C.M.A. 106, 30 C.M.R. 106 (1961). The accused helped himself to this typewriter without the permission of the custodian or anyone else having authority to transfer it to him. He was not simply transferring it from one office to another for the benefit of the same Government; his stated primary intention was to appropriate it for his personal use and benefit. "Here, the object of the exercise was apparently to disadvantage the Government to the benefit of individuals. . . ."

*United States v. Lile*, 42 C.M.R. 852, 856 (A.C.M.R. 1970). That the Government gleaned some benefit from the typewriter in its new location is incidental to the essential purpose of the taking, and does not excuse the offense or eliminate any element.

For the foregoing reasons, the findings of guilty and the sentence are

Affirmed.

ROBERTS, Senior Judge, and FORAY, Judge, concur.